# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KENNETH L. CROWELL AND BERNICE BRANCH, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF CHICAGO, DONALD BRANCH, AND OFFICER ANTON WHITE, <br><br> Defendants. | No. 14 C 565 <br><br> Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Kenneth Crowell and Bernice Branch allege pursuant to 28 U.S.C. § 1983 that Chicago Police Officer Anton White and former Chicago Police Officer Donald Branch assaulted them in violation of the Fourth Amendment. *See* R. 19. Plaintiffs also allege that the City of Chicago negligently retained Donald Branch, despite his history of domestic violence, in violation of state law. *See id.* The City and Officer White (joined by Officer Branch by oral motion on May 14, 2014) have moved to dismiss the negligent retention claim pursuant to Federal Rule of Civil Procedure 12(b)(6), R. 36, arguing that the state court already dismissed Plaintiffs' negligent retention claim prior to removal of the case to federal court, and alternatively that the City is immune to such a claim under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-102. *Id.*; *see also* R. 8. For the following reasons, the Defendants' motion is granted.

## Background

For purposes of this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the following facts are taken from Plaintiffs' complaint and are taken as true, with reasonable inferences construed in Plaintiffs' favor. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

On April 1, 2008, Officers Branch and White were patrolling the 7th police district wearing plain clothes in an unmarked Chicago police car. R. 19 ¶ 11. They left the 7th police district to travel to the vicinity Bernice Branch's home. *Id.* ¶ 14. Officer Branch was married to Bernice Branch, but they were living separately. *Id.* ¶ 13. Officers Branch and White encountered the Branch's oldest daughter while in the vicinity of Bernice Branch's house. *Id.* ¶ 15. The Officers dropped her off at school and then continued on to Bernice Branch's home. *Id.* ¶ 16.

When Officers Branch and White arrived at Bernice Branch's home they saw Bernice Branch and Crowell exiting the home. *Id.* ¶ 18. Officer Branch got out of the police car and approached Crowell and Bernice Branch with his hand near his gun. *Id.* While approaching Crowell and Bernice Branch, Officer Branch had his police badge displayed, and he wore his police bulletproof vest. *Id.* Officer Branch verbally threatened Crowell while keeping his hand on his gun. *Id.* ¶ 20. Officer Branch then grabbed Bernice Branch, choked her, slammed her against a parked car, and hit her in the head and face. *Id.* Officer Branch then removed his gun from its holster and aimed it at Crowell. *Id.* ¶ 21. Crowell raised his hands and pleaded with Officer Branch to stop. *Id.* Crowell ran and Officer Branch pursued him with his gun still

2

drawn. *Id.* ¶¶ 24-25. After Officer Branch left to pursue Crowell, Officer White confronted Bernice Branch and verbally abused her for having a man at her house. *Id.* ¶ 26. Officer White then got in the police car and pursued Crowell for several blocks. *Id.* ¶ 27. At some point during the pursuit, Crowell was able to hide and call 911. *Id.* ¶ 28.

After losing track of Crowell, Officer Branch returned to the front of Bernice Branch's house and smashed in the windows of Crowell's car with a shovel. *Id.* ¶ 29. Bernice Branch then called 911 and Officers Branch and White waited until their fellow officers arrived. *Id.* ¶¶ 30-31. As a result of this incident, Officer Branch was charged with and pled guilty to the crime of official misconduct. *Id.* ¶ 34.

Prior to the incident at issue in this case, Officer Branch had a history of domestic violence incidents of which the City was aware. *Id.* ¶ 35. On April 26, 2004, Chicago Police officers responded to an emergency call by Bernice Branch regarding Officer Branch's aggressive and violent behavior. *Id.* Bernice Branch then obtained a court order for protection against the Officer Branch.[1] *Id.* On May 6, 2006 Officer Branch pinned Bernice Branch to the ground and threatened her with his gun at her head. *Id.* Sergeant Ronald Forgue, one of Officer Branch's supervisors, and other police officers responded to this incident. *Id.* Sergeant Forgue also responded to another domestic incident at the Branch home prior to April 1, 2008. *Id.*

---

[1] The record does not indicate what became of the order of protection, and there is no indication in the record that the order was in effect on the date of the incident in this case.

Plaintiffs originally filed a complaint in the Illinois Circuit Court on March 31, 2009. R. 1-2 at 3-14. Plaintiffs subsequently amended that complaint, and Count I of the amended complaint was a claim against the City for "negligent hiring and retention." *Id.* at 33. In the amended complaint, Plaintiffs alleged the following, in relevant part:

> [The] City of Chicago, by and through its authorized agents committed one or more of the following negligent acts and/or omissions:
>
> a. Hired an officer who had a history, pattern and practice of domestic abuse and irrational, unstable and antisocial behavior unsuitable for police duties;
>
> b. Retained an officer who had a history, pattern and practice of domestic abuse and irrational, unstable and antisocial behavior unsuitable for police duties;
>
> c. Authorized and permitted an officer to remain active on the police force and to interact with citizens, including but not limited to the Plaintiff, who had a history, pattern and practice of domestic abuse and irrational, unstable and demonstrated antisocial behavior unsuitable for police duties;
>
> d. Failed to provide suitable anger management counseling and related services despite knowledge that officer Donald Branch required such intervention and services;
>
> e. Failed to remove officer Donald Branch from street work or assignments which involved direct interaction with the public when the Department had actual knowledge of the officer's irrational and antisocial behavior; and
>
> f. Was otherwise negligent in its hiring and retention of officer Donald Branch.

*Id.* at 34 (¶ 25).

4

The City moved to dismiss Count I arguing that the City is immune under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-102. The state court granted the motion in part and denied the motion in part, and on May 8, 2013, entered an order stating the following, in relevant part:

> (2) Defendant's motion to dismiss Count I is <u>denied</u> as [to] paragraph (a) & (f) as to negligent hiring.
>
> (3) Defendant's motion to dismiss Count I is <u>granted</u> as to negligent supervision, including paragraphs (b), (c), (d), and (e).
>
> (4) Negligent supervision is stricken from paragraph (f).

R. 8-1 at 18-19 (emphases in original).

Plaintiffs then sought leave to file a second amended complaint. At a hearing on January 24, 2014, the state court permitted Plaintiffs to amend their complaint, but noted several times that the court's prior rulings dismissing certain claims would stand. Specifically, the court stated:

> And what the City of Chicago is fearful of is relitigating all of these various and sundry matters that have already been litigated to wit the agency relationship between Officer Branch and the City of Chicago to wit the negligent retention.
> . . . .
> [Defense counsel is] here today saying that he's going to let those orders stand and he's not going to change those orders; the orders of agency and the orders of negligent retention. They stand whatever court hears them.
> . . . .
> The other issue is the question of -- negligent retention that's the third issue. That will stand. Whether I heard it or whether Judge X hears it in the United States District Court. Any and all rulings you want me to put in there I

> will do so. Otherwise I will not grant your motion. So I'm going to allow any and all substantive rulings and procedural rulings to stand against the plaintiff.

R. 8-1 at 51 (15:14-20), 56 (20:14-18), 59-60 (23:21–24:6). Plaintiffs filed a second amended complaint that included a negligent retention claim, which Defendants removed to this Court. R. 1-1 ¶¶ 34-43. Plaintiffs have since filed a Third Amended Complaint that also includes a negligent retention claim. R. 19 ¶¶ 49-54.

The parties argue over whether the state court dismissed Plaintiffs' negligent retention claim, and what effect the state court's orders should have in this Court. The parties also argue over whether 745 ILCS 10/4-102 is broad enough to immunize the City from a claim of negligent retention of a police officer.

**Analysis**

**I.  The State Court's Order**

Defendants argue that the state court already dismissed Plaintiffs' negligent retention claim, and this Court should dismiss Plaintiffs' amended claim of negligent retention pursuant to the law of the case doctrine. Plaintiffs argue, to the contrary, that the state court did not dismiss Plaintiffs' negligent retention claim, and so the law of the case doctrine protects Plaintiffs' amended claim. Clearly, the first step in this analysis must be to determine what the state court actually ordered.

There is no question that the state court intended to dismiss Plaintiffs' negligent supervision claim, as the state court's order expressly provides, "Defendant's motion to dismiss Count I is granted as to negligent supervision,

including paragraphs (b), (c), (d), and (e)." R. 8-1 at 19. Ambiguity arises, however, with respect to negligent retention. The state court dismissed paragraph (b), which included language of negligent retention, alleging that the City, "Retained an officer who has a history, pattern and practice of domestic abuse . . . ." R. 1-2 at 34 (¶ 25). Such language is also present in paragraph (f), but the state court only ordered, "Negligent supervision is stricken from paragraph (f)." R. 8-1 at 19. The state court did not use the word "retention" in its order. At a hearing on January 24, 2014, however, the state court at least implied—if not stated expressly—that it had dismissed Plaintiffs' negligent retention claim. *See* R. 8-1 at 51 (15:14-20), 56 (20:14-18), 59-60 (23:21–24:6).

Notably, despite the state court's order dismissing Plaintiffs' negligent "supervision" claim, the amended complaint did not use the word "supervision." See R. 1-2 at 27-39. This is likely because, as Defendants point out, "in the employment context" the Illinois Supreme Court "has not distinguished" negligent supervision and negligent retention. *Skywalker Outdoor, Inc. v. Van Wagner Commc'ns*, LLC, 2011 WL 10068650, at *7 (Ill. App. Ct. 1st Dist. Apr. 7, 2011) (citing *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998)); *accord Helfers-Beitz v. Degelman*, 939 N.E.2d 1087, 1091 (Ill. App. Ct. 3d Dist. 2010); *Zahl v. Krupa*, 927 N.E.2d 262, 283 (Ill. App. Ct. 2d Dist. 2010). Negligent retention and negligent supervision in the employment context are indistinguishable under Illinois law because, in the employment context, both claims require a finding that the employee was "unfit for the job so as to create a danger of harm to third persons." *Van Horne*, 705 N.E.2d at

7

904 (negligent retention); *Reynolds v. Jimmy John's Enters., LLC*, 988 N.E.2d 984, 998-99 (Ill. App. Ct. 4th Dist. 2013) (negligent supervision); *Paul v. ING Fin. Partners Inc.*, 2010 WL 8544601, at *8 (Ill. App. Ct. 3d Dist. Sept. 10, 2010) (negligent supervision).

Taking into account the state court's written order of May 8, 2013, the state court's oral order of January 24, 2014, and Illinois case law stating that negligent retention and negligent supervision are legally indistinguishable, the Court finds that the state court dismissed Plaintiffs' negligent retention claim on May 8, 2013. The state court's written order consistently stated that the court was ordering dismissal of the Plaintiffs' negligent supervision claim, despite the fact that Plaintiffs' amended complaint used the words "retained" and "retention" rather than "supervision." Additionally, the state court later described this order as effectuating dismissal of Plaintiffs' negligent "retention" claim, indicating that the state court did not perceive a distinction between negligent supervision and negligent retention. Furthermore, the state court's consistent conflating of the terms negligent retention and negligent supervision is explained by the lack of a legal distinction between the claims under Illinois case law. Thus, when the state court dismissed Plaintiffs' negligent supervision claim, it also dismissed Plaintiffs' negligent retention claim.

## II. Immunity Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-102

The state court dismissed Plaintiffs' negligent supervision and negligent retention claim because the state court found that the City was immune to such

claims under 745 ILCS 10/4-102. R. 8-1 at 18. Under the law of the case doctrine, the Court can only revist the state court's order if there is "a compelling reason, such as manifest error or a change in the law." *Toliver v. Pollard*, 688 F.3d 853, 861 (7th Cir. 2012). "In the context of removal, once the case is in federal court, the state court orders issued prior to removal are not conclusive but remain binding until they are set aside." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1037 (7th Cir. 1998). This rule both promotes "judicial economy" and protects "the parties' rights." *Id.* at 1038 (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 Alameda County*, 415 U.S. 423, 435-36 (1974)). District courts "should . . . evaluate[] . . . state court proceedings under the law of the case doctrine and, under the principles of that doctrine, decline[] to revisit any matters that present[] no reason for revisitation." *Payne*, 161 F.3d at 1038. "A change in, or clarification of, law that makes clear that the earlier ruling was erroneous" is an example of a compelling reason for a court to relitigate an issue. *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). This doctrine is discretionary and "no more than a presumption, one whose strength varies with the circumstances." *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995).

Here, the Court cannot say that the state court's holding that Defendants are immune to Plaintiffs' negligent retention and negligent supervision claim constitutes "manifest error." Under 745 ILCS 10/4-102

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide

9

> adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee.

The Illinois Supreme Court has interpreted this statute as being "comprehensive in the breadth of its reach, addressing situations where no police protection is provided to the general public and those in which inadequate protection is provided." *DeSmet v. County of Rock Island*, 848 N.E.2d 1030, 1042 (Ill. 2006). Thus, police departments in Illinois are immune to "[a]llegations [that] implicate the structural adequacy of the police protection services." *Id.* at 1041.

Plaintiffs argue that their claim for negligent retention or supervision "does not rely on a failure to provide police protection," R. 38 at 2, but rather "that adequate training and supervision cannot stop a man who is known to be violent from behaving violently." *Id.* at 4. Plaintiffs argue further, that the cases the City cites in support of immunity arose in circumstances where the plaintiffs were harmed by police officers while those officers provided a police service, or when police departments failed to provide adequate service or any service at all. *See DeSmet*, 848 N.E.2d at 1040-41 (allegation that 911 services failed to respond); *Doe v. Village of Schaumburg*, 955 N.E.2d 566, 570-71 (Ill. App. Ct. 1st Dist. 2011) (allegation that police failed to warn school that a current student had been arrested for aggravated criminal assault). Plaintiffs contend that they "make no claims about the adequacy of the services the City provides to the general public,"

10

and that "[w]hether the City's procedures are structurally adequate is truly of no concern to the Plaintiffs." R. 38 at 4.

Despite Plaintiffs' contention, however, it is precisely the City's procedures for hiring, evaluating, and firing police officers with which Plaintiffs take issue in their negligent retention and supervision claim. The Illinois Supreme Court has broadly interpreted 745 ILCS 10/4-102 to immunize municipalities from claims that implicate the manner in which they go about establishing police departments and providing police services. *See DeSmet*, 848 N.E.2d at 1042. Hiring, evaluating, and firing police officers is at the core of establishing a police department and providing police services, since police services cannot be provided without police officers. The Court acknowledges that neither the parties nor the Court have identified any case in which an Illinois court has applied 745 ILCS 10/4-102 to claims of negligent retention or supervision in the employment context. The Court also acknowledges that the principal cases the parties have cited—*DeSmet*, 848 N.E.2d 1030, and *Doe v. Village of Schaumburg*, 955 N.E.2d 566—addressed circumstances in which police officers were actively attempting or failing to provide police services. *See also M.W. v. Doe 1*, 2012 WL 3717790, at *4-5 (N.D. Ill. Aug. 27, 2012) (dismissing negligent supervision claim against municipality because municipality was immune to claim arising from allegation that juvenile offender was placed in adult jail rather than juvenile jail). This lack of authority directly on point is not a basis to conclude, however, that the state court in this case committed "manifest error" when it dismissed Plaintiffs' negligent retention and supervision claims pursuant to

745 ILCS 10/4-102. Absent a future change in Illinois law, there is no basis to revisit the state court's decision.

## Conclusion

For the foregoing reasons, Defendants' motion, R. 36, is granted, and Plaintiffs' negligent retention claim is dismissed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 21, 2014