# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH CROWELL and BERNICE BRANCH, | ) ) | |
| Plaintiffs, | ) | Case No. 14 cv 0565 |
| v. | ) ) | Judge Thomas M. Durkin |
| CITY OF CHICAGO, a municipal corporation; DONALD BRANCH, and ANTON WHITE, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT DONALD BRANCH'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

Defendant Donald Branch ("Mr. Branch"), by counsel, respectfully submits this renewed motion for a judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The Court should enter a judgment notwithstanding the jury's verdict because Plaintiffs Kenneth Crowell and Bernice Branch failed to produce sufficient evidence from which a trier of fact could reasonably conclude that Mr. Branch is liable under Plaintiffs' Section 1983 claim.

## I.  INTRODUCTION

Plaintiffs Bernice Branch and Kenneth Crowell ("Plaintiffs")—Mr. Branch's ex-wife and her ex-boyfriend, respectively—sued Mr. Branch under Section 1983 for using excessive force against them during an altercation outside Bernice Branch's residence on April 1, 2008. At the time of the incident, Mr. Branch was an officer with the Chicago Police Department. Following a trial last month, a jury rendered a verdict holding Mr. Branch liable to Plaintiffs in the combined amount of $385,000.

Mr. Branch now moves for a judgment in his favor notwithstanding the jury's verdict because the evidence at trial failed to establish an essential element of Plaintiffs' Section 1983 claim: namely, that Mr. Branch was acting "under color of law" at the time of the incident. In fact, the preponderance of the evidence introduced at trial established that Mr. Branch was pursuing purely personal motives during the incident, and that his actions did not relate in any way to his performance of official duties. As such, Mr. Branch could not possibly be considered to have been acting under color of state law and he is therefore entitled to judgment as a matter of law.

A motion for judgment as a matter of law should be granted where the "evidence, with all inferences justifiably deducible therefrom, does not justify a verdict in favor of the party producing the evidence." *Selle v. Gibb*, 567 F. Supp. 1173, 1179 (N.D. Ill. 1983). The task of a court entertaining such a motion is to determine whether the jury was presented with a "legally sufficient amount of evidence from which it could reasonably derive its verdict" based on the totality of the evidence. *Massey v. Blue Cross–Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). There must have been more than a "mere scintilla" of evidence to support the jury's verdict. *Id*.

II.     **THE EVIDENCE AT TRIAL**

On the morning of April 1, 2008, Mr. Branch called Bernice Branch, from whom he had been separated for 1½ years, to see if she had time to meet before work. She agreed, and they met at the parking lot across the street from their younger daughter's school, around 7:15 a.m. He gave Bernice Branch their older daughter's cell phone—which he had confiscated weeks earlier as punishment—and said he'd go to Julian High School after roll call to pay the older daughter's prom and graduation fees, which were due that day.

After roll call, Mr. Branch asked his sergeant for permission to drop off the school fees. Even though Sergeant Schaaf considered this to be a personal errand, he gave Mr. Branch his blessing. Shortly after that, Mr. Branch and his partner, co-defendant Anton White, left the station and headed to the credit union so Mr. Branch could withdraw the money to pay the fees. Along the way, they ran into Mr. Branch's older daughter waiting for the bus. Concerned about the reasons his daughter was not yet in school, Mr. Branch tried calling Bernice Branch, but she did not answer. Because Bernice Branch's house was in the direction of the credit union, Mr. Branch decided to drive by the house to verify his daughter's story about the reasons she was late for school.

He arrived at the house around 9:30 a.m., and saw that Bernice Branch exiting with Kenneth Crowell. Instead of proceeding to the credit union, he stopped his vehicle and got out of the car. He confronted Bernice Branch about what appeared to him to be a double standard—why it was acceptable for her to have the kids around a boyfriend when he was not allowed have them around his girlfriend. In the seconds and minutes that ensued, Mr. Branch grabbed Bernice Branch in the neck and pushed her down, he drew his gun and pointed it at Kenneth Crowell. Kenneth Crowell ran away, and Mr. Branch pursued him around the corner to the alley, about 200 feet away.

### III.   DONALD BRANCH WAS NOT ACTING UNDER COLOR OF LAW

To prevail on their Section 1983 claims, Plaintiffs had to prove that "[1.] a government official, [2.] acting under the color of state law, [3.] deprived [them] of a right secured by the Constitution." *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible *only* because the
3

wrongdoer is clothed with the authority of state law.'" *Currie v. Cundiff*, No. 09-CV-866-MJR, 2012 WL 2711469, at *5 (S.D. Ill. July 8, 2012), *citing West v. Atkins*, 487 U.S. 42 (1988).

A. **To be committed under color of law, a police officer's actions—whether taken while on or off duty, in or out of uniform, and with or without a service weapon, badge or police vehicle—must relate to the performance of police duties as opposed to purely personal pursuits.**

Critically, "although most police officers are state officials [i.e., the first element] for purposes of Section 1983, the mere fact that the defendant is a police officer does not mean that the defendant acted under color of state law." *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1132 (N.D. Ill. 2003), *citing Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990)). Indeed, the Supreme Court has observed that "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). And "the question whether a police officer acted under color of state law is not answered by whether the officer was on or off duty at the time," nor by "the accouterments of state authority, such as the police uniform, patrol car, badge or a gun." *Lyons*, 257 F. Supp.2d at 1132 (N.D. Ill. 2003).

Rather, even acts committed while a police officer is on duty are not committed under color of state law "unless they are in some way 'related to the performance of police duties.'" *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) (quoting *Briscoe v. LaHue*, 663 F.2d 713, 721 n. 4 (7th Cir. 1981)); *see also Bonenberger v. Plymouth Township*, 132 F.3d 20, 24 (3d Cir. 1997) (holding that "a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of state law"); *Martínez v. Colón*, 54 F.3d 980, 986 (1st Cir. 1995) (holding that "in general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or

4

unless the conduct is such that the actor could not have behaved in that way but for the authority of his office). Thus, where a police officer's conduct—whether on or off duty—is personal and not purported to be in the exercise of any state authority, the conduct cannot be viewed as an act under the color of state law. *Id.*

For instance, in *Martínez*, 54 F.3d at 988, the First Circuit held that an on-duty, uniformed police officer's harassment and shooting of a fellow employee at a police station using a service-issue weapon were not conduct occurring under the color of state law because the officer's behavior represented a "singularly personal frolic" that was not—and did not purport to be—in furtherance of any exercise of police power. Similarly, in *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994), the Third Circuit ruled that off-duty police participants in an altercation involving the unauthorized use of a police-issue nightstick did not act under color of state law where the dispute arose out of one officer's personal and family concerns and where no attempt was made to invoke police authority or make an arrest. *See also Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (holding that a police chief's assault on his sister-in-law was not conduct under color of law, even though it occurred at police headquarters, because the assault arose out of a family squabble); *Zienciuk v. City of Chicago*, No. 01-C-3769, 2002 WL 1998309, at *5-6 (N.D. Ill. Aug. 28, 2002) (off-duty police officers that engaged in bar fight that was wholly unrelated to police duties did not act under color of state law where they did not wear police uniforms, did not identify themselves as police officers when approaching the plaintiff, and did not attempt to assert police authority by arresting plaintiff); *Lyons*, 257 F. Supp. 2d at 1132-33 (same).

**B. Mr. Branch did not act under color of law during the incident because his motives were purely personal.**

In this case, Mr. Branch's conduct during the incident had absolutely nothing to do with his duties as a police officer but, instead, was based on a purely personal matter. For this threshold reason, Mr. Branch cannot, as a matter of law, be deemed to have acted under color of law, even if he happened to be on duty at the time. *See Lyons*, 257 F. Supp.2d at 1132. And because none of the various other criteria courts have considered in determining whether an individual acted under color of law—such as the "accouterments of state authority," which include "the police uniform, patrol car, badge or a gun"—could have reasonably supported a contrary finding in this case, Mr. Branch is entitled to judgment as a matter of law notwithstanding the jury's verdict. *Id*.

   **1.   The evidence at trial unequivocally established that the purpose of Donald Branch's visit to Bernice Branch's residence was exclusively personal and not official.**

As recited above, the "essential inquiry" in determining whether a police officer acted under color of law "is whether the police officer's actions related in some way to the performance of a police duty." *Lyons*, 257 F. Supp. 2d at 1132. In this case, the testimony at trial unequivocally established that Mr. Branch's actions did not relate to his official duties. For instance, according to the unchallenged testimony of both Mr. Branch and co-defendant Anton White, Mr. Branch's very presence at Bernice Branch's residence on the morning of the incident was the result of a personal, "family matter": Mr. Branch wanted to verify his daughter's account of why she was absent from school that morning.

Plaintiffs' own testimony corroborated these accounts: Bernice Branch testified that Mr. Branch's actions were driven by purely personal motives that bore no relation to his official duties as an officer, and that "there was nothing [Mr. Branch] did that day that [she]

thought was part of him being a cop." And in speaking to a 911 dispatcher on the morning of the incident, she explained that the dispute arose because "[Donald] feels that I'm not supposed to have nobody staying here." Kenneth Crowell similarly testified that he knew that Mr. Branch was not discharging his police duties during the incident. His trial testimony reinforced the entirely personal nature of Mr. Branch's dispute with him: as he testified, when Mr. Branch confronted him, along with Bernice Branch, outside Bernice Branch's house and drew his weapon, Kenneth Crowell's response was to raise his hands and say something to the effect of "it's not what you think."

Likewise, Sergeant Schaaf testified that he gave permission to Mr. Branch to leave the Seventh District, to which Mr. Branch was normally assigned, to run a "personal errand" concerning his daughter. Thus, not a single occurrence witness in this case—including Plaintiffs themselves—thought Mr. Branch was performing police duties during the incident in question. And because this is the "essential inquiry" in evaluating whether Mr. Branch acted under color of law, it is dispositive of Plaintiffs' Section 1983 claim against Mr. Branch; thus he is entitled to judgment as a matter of law.

2.  **None of the other criteria courts have also considered as part of the color of law analysis could have reasonably supported the jury's finding that Mr. Branch acted under color of law.**

Although the relationship between a police officer's actions and his official duties is the central inquiry for purposes of determining whether the officer acted under color of law, courts have also considered certain other criteria as part of their analysis, such as (1) the officer's duty status during the incident, (2) assertions or invocations of official authority, or (3) "the accouterments of state authority, such as the police uniform, patrol car, badge or a gun." *Lyons*, 257 F. Supp.2d at 1132. Courts have stressed, however, that

these criteria are not dispositive. *Id*. In this case, none of these criteria—particularly when considered in conjunction with Mr. Branch's motives and the fact that Plaintiffs were both already aware that he was a police officer—could have reasonably supported the jury's finding that Mr. Branch acted under color of law.

      **a.    Although Mr. Branch happened to be on duty at the time, this fact is immaterial to the larger analysis of whether Mr. Branch was acting under color of law.**

Even if a police officer happens to be on duty at the time of an incident, for purposes of determining whether he acted under color of law, "the essential inquiry is whether the police officer's actions related in some way to the performance of a police duty." *Lyons*, 257 F. Supp. 2d at 1132; *see also Briscoe v. LaHue*, 663 F.2d 713, 721 n.4 (7th Cir. 1981) ("acts committed by a police officer *even while on duty and in uniform* are not under color of state law unless they are in some way 'related to the performance of police duties'") (emphasis added). The fact that Mr. Branch happened to be on duty at the time of the incident at issue in this case is thus immaterial to the determination of whether he acted under color of law because, as the testimony at trial uniformly established, the motivations behind his actions that day were completely personal.

      **b.    Mr. Branch did not invoke his official authority during the incident.**

More relevant to the analysis of whether Mr. Branch acted under color of law is the notable fact that he never asserted his official authority during the incident. *See Lyons*, 257 F. Supp. 2d at 1132-33 (granting summary judgment on Section 1983 claims where defendants had not acted under color of law during "simple bar fight," during which court noted they "did not order [the plaintiffs] up against the wall ... and did not inform them that they were under arrest"); *Zienciuk*, 2002 WL 1998309, at *6 (granting summary judgment

on Section 1983 claims where defendants had not acted under color of law during "a bar fight, plain and simple," during which court noted they did not "assert[ ] their police authority over [the plaintiff] by arresting him, and they behaved the same way non-police officers would behave after they got into a brawl"). At trial, Mr. Branch's unchallenged testimony established that he did not arrive at the scene blaring a siren or flashing lights or otherwise announce himself as the police; he did not arrest or threaten to arrest anyone; he did not restrain Plaintiffs, put them in his car, or even order them to "freeze".

In fact, Plaintiffs' own testimony and accounts of the incident completely belie the notion that Mr. Branch invoked any official authority that day. According to Bernice Branch, when Mr. Branch exited the vehicle and approached her—far from acceding to any invocation of "official" authority—she jumped in front of Mr. Branch and tried to block his alleged advancement towards her boyfriend Kenneth Crowell. And according to Kenneth Crowell, when Mr. Branch allegedly told him to "come here", Mr. Crowell did not do so, instead he backed away; when Mr. Branch drew his weapon, Mr. Crowell did not "freeze", instead he took off running; and when Mr. Branch pursued him, Mr. Crowell did not stop, instead he ran faster and hid. Thus, there was no testimony from which a jury could reasonably infer that Mr. Branch was acting—or purporting to act—as a police officer.

### c. The indicia of Mr. Branch's official position were insufficient to convert his personal actions into official ones.

The limited indicia of Mr. Branch's official position—such as his service weapon, his police badge, and his unmarked police car—do not reasonably support a finding that Mr. Branch acted under color of state law, either. For starters, these things which might have indicated that Mr. Branch was a police officer did not inform or announce to Plaintiffs anything they did not already know—both Plaintiffs already knew that Mr. Branch was

9

police officer before he even pulled up in his car. *See Lyons*, 257 F. Supp.2d at 1133 (holding that "[t]he mere fact that a victim knew that his attackers were police officers ... does not mean that those officers acted under color of state law"). And these limited items did not change the basic, undisputed fact that Mr. Branch's actions that day were motivated by purely personal objectives, not his official duties.

Consequently, Mr. Branch's use of a service weapon during the incident is ultimately inconsequential. *See Kindred v. Hilt-Dyson*, No. 94 C 4377, 1995 WL 250417, at *3 (N.D. Ill. April 25, 1995) (holding that "only the circumstances surrounding the use of the service weapon, not the mere fact of its use, have constitutional relevance" in any color-of-law analysis). The same is true for the police badge he testified he was wearing around his neck that day and the unmarked police car he was driving. *See Lyons*, 257 F. Supp.2d at 1132 (N.D. Ill. 2003) ("the accouterments of state authority, such as the police uniform, patrol car, badge or a gun, are not dispositive"). Indeed, because these indicia would have revealed nothing new to Plaintiffs, both of whom already knew Mr. Branch was a police officer, they should be accorded limited weight in the Court's larger—and more important—analysis of the other evidence concerning Mr. Branch's underlying motives. *See Bonenberger*, 132 F.3d at 24 ("a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of state law").

IV.     **CONCLUSION**

Because Mr. Branch's reasons for being at Bernice Branch's house and his conduct during the incident stemmed entirely from personal reasons and had nothing whatsoever to do with the performance of any official duties, he cannot as a matter of law be deemed to have acted under color of law. The evidence simply does not justify the verdict that was entered, and thus Mr. Branch is entitled to judgment as a matter of law.

Respectfully submitted,

DONALD BRANCH

By:     /s/ Angad S. Nagra
        One of his attorneys

Anna-Katrina S. Christakis
Jeffrey D. Pilgrim
Angad S. Nagra
Pilgrim Christakis LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604

## CERTIFICATE OF SERVICE

Angad S. Nagra, an attorney, certifies that on December 15, 2014, he electronically filed the foregoing **DEFENDANT DONALD BRANCH'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Angad S. Nagra